UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

*In re*                                                            Chapter 11

THIRTY WOODHOLLOW CT., INC.,

                                                                 Case No.:

                              Debtor.
----------------------------------------------------------------x

## DISCLOSURE STATEMENT

This Disclosure Statement ("Disclosure Statement") is filed pursuant to Section 1125 of Title 11, United States Code, on behalf of THIRTY WOODHOLLOW CT., INC., (the "Debtor"), the debtor and debtor-in-possession.

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED**

## A. INTRODUCTION/NOTICE OF HEARING AND SOURCE OF INFORMATION

Pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), the Debtor in this Chapter 11 case, provides this Disclosure Statement (the "Disclosure Statement") to all of its known creditors and other parties in interest in order to provide information deemed by the Debtor to be material and necessary to enable such creditors and parties in interest to make a reasonable informed decision in the exercise of their rights to vote on and participate in the Debtor's Plan of Reorganization (the "Plan"). The Plan is annexed hereto as **Exhibit "A"**.

Terms utilized in this Disclosure Statement, if not defined herein, shall have the same meaning as such terms are used or defined in the Plan unless the context hereof requires a different meaning.

The information contained in this Disclosure Statement is based on the representations made by the Debtor in its Petition and Schedules, monthly operating reports and all other documents and information provided by the Debtor.  While the information and documentation submitted herewith is believed to be accurate, it has not been subjected to a certified audit or independent review. Therefore, no representation or warranty is made as to its accuracy or completeness.  The Debtor has reasonably endeavored to obtain and supply all material information on an accurate basis.  The Bankruptcy Court will conduct a hearing on the adequacy of the Disclosure Statement.

**THE BANKRUPTCY COURT HAS SET _____, 2018, AT _:__ __.M. AS THE DATE AND TIME OF THE HEARING ON CONFIRMATION OF THE DEBTOR'S PLAN AND OBJECTIONS THERETO, WHICH HEARING WILL BE HELD IN THE UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF NEW YORK, 290 FEDERAL PLAZA, CENTRAL ISLIP, NY 11722. CREDITORS OF THE DEBTOR MAY ATTEND SUCH HEARING.   THE BANKRUPTCY COURT HAS SET _____, 2018 AS THE DATE BY WHICH ALL WRITTEN OBJECTIONS TO THE PLAN SHALL BE FILED WITH THE BANKRUPTCY COURT AND SERVED UPON THE DEBTOR'S ATTORNEYS, AND UPON THE UNITED STATES TRUSTEE.**

**THE DEBTOR URGES YOU TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT WITH COUNSEL OF YOUR CHOICE AND RECOMMENDS THAT CREDITORS VOTE IN FAVOR OF THE PLAN.**

Other than the information set forth in this Disclosure Statement, the Debtor has not authorized any person or entity to make representations concerning the Debtor's future income, the value of its assets, or the amounts to be distributed under the Plan.  Any representations or inducements made to secure your acceptance of the Plan which are other than as contained in this Disclosure Statement should not be relied upon by you in determining whether to accept or reject

2

the Plan.

**B.    PRE-PETITION HISTORY OF THE DEBTOR AND EVENTS LEADING UP TO CHAPTER 11**

The Debtor is a corporation which owns residential premises at 30 Woodhollow Court, Syosset, New York 11791 (the "Residence").  The Residence is within the boundaries of the Village of Muttontown, (the "Village") a judgment creditor and the only creditor herein.  The Debtor's financial difficulties arose, in part, when the deck of the premises partially collapsed in 2002, requiring correction of grading and drainage on the property.  The Village of Muttontown, issued various building permits, but the construction of the retaining wall has never been completed, due to the issuance of numerous "stop work" orders.  The Village filed suit and on April 19, 2010 the Supreme Court of the State of New York, County of Nassau issued a contempt order but allowed the debtor to purge same by compliance with the Village and appointed a Receiver to sell the premises subject to the new owner bringing the home into compliance.  Since that time the debtor has endeavored to comply be lowering the retaining wall and removing the debris even though hampered by "stop work" orders from the Village.  The debtor advise that  its architect will become in compliance with the Village code.  There are $83,266.63 plus interest at the judgement rate of (9%) nine per cent in outstanding judgements which the debtor will pay by selling the property through a qualified court approved real estate broker before December 30th, 2018.

Upon information and belief, as of the Petition Date, the Village was owed the sum of $83,266.63 plus interest  on account of costs incurred and the referee had scheduled an Auction for May 1, 2018.  As of the date of this Disclosure Statement the Village has not filed a proof of

claim.

In order to avoid a public auction of the Residence, which the Debtor believes would result in a substantially diminished sales price, the Debtor filed for Chapter 11 bankruptcy protection on June 19th, 2018 (the "Petition Date"). The Debtor's purpose in filing for bankruptcy relief was to be given the opportunity to sell the Residence in a properly advertised and marketed sale with a licensed broker, to obtain the maximum value for the Premises and therefore the greatest possible recovery to creditors.

**C.**     **HISTORY OF THE DEBTOR'S BANKRUPTCY CASE**

     **1.**     **Procedural Background**

On June 19th, 2018, the Debtor filed a voluntary petition for relief from its creditors under Chapter 11 of the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code"). The debtor filed its bankruptcy petition, a Statement of Financial Affairs and Schedules. A first meeting of creditors, pursuant to 11 U.S.C. § 341(a) is scheduled for            , 2018.

The Debtor will propose a plan to reorganize its debts via a sale of the Residence, which the Debtor believes will be sufficient to enable 100% payment of all claims.

The Debtor submitted an order seeking the retention of Phillips, Artura and Cox, Esqs. as counsel to the Debtor and will submit an order authorizing Debtor to retain a licensed real estate broker (the "Broker").

     **2.**     **Debtor's Post-Petition Operations**

Debtor's principal and his family reside at the premises with the debtor's principal paying $5,000 per month rent which is used by debtor to pay the Town Of Oyster Bay property

general and school property taxes directly to the tax receiver.  The Village of Muttontown taxes are in arrears and will be paid in full including penalties and accrued interest at closing.

**D.**     **CURRENT VALUATION OF THE RESIDENCE**

The Debtor believes the current value of the Residence is approximately $2,500,000. This valuation is based upon a Zillow estimate and a better valuation will be provided by the broker.  Based upon this valuation, the Debtor believes there is more than sufficient equity in the Residence to fund a 100% distribution to all Allowed Claim holders.

**E.**     **THE REORGANIZED DEBTOR**

The Plan contemplates that the Debtor shall retain its assets and property (other than the Residence which the Debtor intends to sell) and other interests subject only to those liens, claims and encumbrances set forth herein or which survive confirmation of the Debtor's Plan.

**F.**     **PLAN FUNDING**

The Plan will be financed from funds derived from the net proceeds of the sale of the Debtor's Residence.  The proceeds from the sale alone are expected to be sufficient to pay all Allowed Administrative, Secured, Priority and Unsecured Claims in full with the balance, if any to Debtor.  The Debtor believes that the Plan is fair and reasonable and strongly recommends that Creditors accept the Plan.  As no creditors are impaired debtor proposes a "no vote" plan.

**G.**     **DESCRIPTION OF THE PLAN**

The following is a summary of certain provisions of the Plan.  IT IS NOT A COMPLETE STATEMENT OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO PROVISIONS OF THE PLAN.  The Plan is annexed to this Disclosure Statement as Exhibit "A".  The Plan, which is subject to the provisions of the Bankruptcy Code, provides for

5

treatment of all Creditors of the Debtor.  SINCE THE PLAN DEALS WITH SOPHISTICATED LEGAL CONCEPTS, AND INCORPORATES THE DEFINITIONS AND REQUIREMENTS OF THE BANKRUPTCY CODE, YOU MAY WISH TO CONSULT WITH COUNSEL OF YOUR CHOICE IN MAKING ANY DECISIONS REGARDING THE PLAN.

1.    **Classifications and Treatment of Claims and Interests
      Under the Plan**

Pursuant to Section 1126 of the Bankruptcy Code, the Plan must be accepted by more than one half in number and two-thirds in amount of at least one class of impaired creditors of those voting in order for the Plan to be confirmed.  The Plan divides Claims and Interests of the Debtor into Administrative Claims and two (2) classes of Claims.  The classes and payments to be made with respect of, or treatment proposed to be accorded to Claims of each Class under the Plan are summarized and described below.  The term "Allowed Claim" is defined in the Plan. The Plan also defines "Disputed Claim(s)" and proposes the treatment to be accorded to Disputed Claims.  The proposed treatment of Disputed Claims is also summarized and described below.

a.    **Administrative Claims**

In order to confirm the Plan, it is necessary for the Debtor to satisfy the Allowed Administrative Claims on the Effective Date, or to have the holders of the Administrative Claims agree to different treatment.

Outstanding Administrative Claims consist of the Allowed Claims, incurred during the bankruptcy proceeding including, of the Debtor's duly retained professionals, including Phillips, Artura and Cox and the broker and any other administrative expenses allowed or allowable under Section 503 of the Bankruptcy Code.  Phillips, Artura and Cox shall file fee applications, pursuant to Section 330 of the Bankruptcy Code, seeking the allowance and payment of all sums

and any other fees that have accrued during the period of the Debtor's reorganization. The estimated fees and expenses are approximately $25,000 and the broker shall be entitled to an expected commission of four (4%) percent of the sales price of the Residence, inclusive of all expenses, including advertising, publication and marketing expenses.

Upon approval by the Bankruptcy Court, the Allowed Administrative Claims of the Debtor's Professionals shall be either paid (i) as soon as practical after the later of (a) the Effective Date, and (b) thirty (30) days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (ii) in accordance with such other treatment to which the Debtor and such holder have agreed.

**b.**    **Priority Claim**

As of the Date of this Disclosure Statement, no Claims have been filed and the Debtor does not anticipate any Priority Claims to be filed in this case.

**c.**    **Class I (Secured Claim)** - Consists of Allowed Secured Claim of Village of Muttontown. As of the date of this Disclosure Statement, it has not filed a Proof of Claim, however the Debtor estimates the Village's Secured Claim to be in the amount of $83,266.63 plus 9% interest. As security for payment of its Allowed Class I Secured Claim, it shall retain its security interest in the Reorganized Debtor's assets with the same validity, priority, and extent as existed prior to the Petition Date. The Secured Claim of Village of Muttontown shall be paid as follows: (i) a single lump sum payment representing the balance of the Secured Claim upon the sale of the Residence which the Debtor estimates will be on or before December 31, 2018. As a result, the Class I Claim is unimpaired under §1124(2) and not entitled to vote pursuant to §1126(f) of the Bankruptcy Code.

**d.**    **Class II (Unsecured Claims)** - Consists of the allowed General Unsecured Claims.

7

Although as of the date of this Disclosure Statement the Bar Date has not passed, the Debtor believes the total amount of Unsecured Claims to be approximately $0.  Holders of Allowed Class II Claims, if any shall receive 100% of their Allowed Class II Claim with interest at the Federal Rate as of the Petition Date.  As a result, any Class II Claim is unimpaired under §1124(2) and not entitled to vote pursuant to § 1126(f) of the Bankruptcy Code.

**e.**    **Classes Impaired Under The Plan**

Under Section 1126 of the Code, Classes of Claims or Interests which are impaired are entitled to vote on a Plan of Reorganization.  Under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is impaired unless the Plan, with respect to such Class:

(A)    leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

(B)    reinstates the maturity of such Claim or Interest as such maturity existed before such default; or

(C)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; or

(D)    if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the Debtor or an insider) for any pecuniary loss incurred by such holder as a result of such failure; and

(E)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Debtor anticipates that there will be no classes impaired by the plan.

**H.**    **REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

**1.**    In order to confirm the Plan, Section 1129 of the Bankruptcy Code requires the Bankruptcy Court to make a series of determinations concerning the Plan, including that:

a.      the Plan classifies Claims and Interests in a permissible manner;

b.      the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code;

c.      the proponents of the Plan has proposed the Plan in good faith;

d.      the Plan proponent's disclosures concerning the Plan have been adequate and have included information concerning all payments and distributions to be made in connection with the Plan; and

e.      Confirmation of the Plan will not be followed by the need for liquidation or the need for further financial reorganization of the Debtor.

The Debtor believes that all of these conditions have been met or will be met by the time of the Confirmation Hearing, and the Debtor will seek a determination of the Bankruptcy Court at the Confirmation Hearing that each of these elements has been met.

     2.      **<u>Acceptances Necessary for Confirmation</u>**.

The Bankruptcy Code requires that the Plan place each creditor's Claim and each Interest in a class with other Claims or Interests which are substantially similar.  The Debtor believes that the classification system in the Plan meets the Bankruptcy Code's standard. Although the Bankruptcy Court must independently conclude that the Plan's classification system is legally authorized, any Creditor or Interest holder who believes that the Plan has improperly classified any group of Claims or Interests may object to Confirmation of the Plan.

The Bankruptcy Code requires that the Plan be accepted by requisite votes of Creditors and Interest Holders in impaired classes.  At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each Class of Creditors and Interest holders whose Claims or Interests are impaired under the Plan.  Under Section 1126 of the Bankruptcy Code, any impaired Class is deemed to accept the Plan if it is

accepted by at least two-thirds in amount and more than one-half in number of the Allowed

Claims or Interests of Class members who have voted on the  Plan.

Further, at least one impaired Class must accept the Plan, without counting the

vote of Insiders of the Debtor.

Finally, unless there is unanimous acceptance of the Plan by an impaired Class,

the Court must also determine that under the Plan, Class members will receive property of value

as of the Effective Date of the Plan that is not less than the amount such Class members would

receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the

Effective Date.

**Notwithstanding the foregoing, if no holders of claims in Classes I, and II that are**

**eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be**

**deemed accepted by the holders of such claims or equity interests in such Class.**

4. <u>**Confirmation of the Plan Without Necessary Acceptances**</u>.

The Plan may be confirmed even if it is not accepted by all of the impaired

classes if the Court finds that the Plan was accepted by at least one impaired Class and does not

discriminate unfairly against, and is fair and equitable with respect to, all non-accepting impaired

Classes.  This provision is set forth in Section 1129(b) of the Bankruptcy Code and requires,

among other things, that the holders of Claims or Interests which are impaired must either

receive or retain the full value of their Claims or, if they receive less, no Class with a junior

priority may receive anything except in a case in which the Debtor is an individual, then in such

case the Debtor may retain property included in the estate under 11 U.S.C. § 1115, subject to the

requirements of 11 U.S.C. § 1129(a)(14).

5. <u>**Absolute Priority Rule.**</u>

With certain exceptions, one of the requirements for confirmation is that a Plan not provide for any payments to a junior Class unless all senior Classes are paid in full. Since General Unsecured Claims are superior to the Debtor, the Debtor may not retain its interests, except as to property delineated by Bankruptcy Code Section 1115, unless one of three situations occur:

    (i)      The Plan provides for full payment to general unsecured creditors; or

    (ii)     The stockholders seeking to retain their equity interests contribute "money or money's worth" in the form of needed capital to the Reorganized Company reasonably equivalent in value to that of the equity interest sought to be retained; or

    (iii)    The class of unsecured creditors waive their rights by consenting to the Plan as proposed.

**6.**      **Persons Entitled to Vote on the Plan.**

Only the votes of Classes whose Claims or Interests are impaired by the Plan will be counted in connection with confirmation. Generally, this includes any holders of Claims who, under the Plan, will have their contractual rights to payment altered under the Plan. The following Classes of Creditors are entitled to vote on the Plan: None

**7.**      **Solicitation of Acceptances.**

This Disclosure Statement must be approved by the Bankruptcy Court in accordance with Section 1125 of the Bankruptcy Code and be provided to creditors which have been scheduled by the Debtor or which have filed a proof of claim and are impaired under the Plan. This Disclosure Statement is intended to assist holders of Claims which are impaired in evaluating the Plan and in determining whether to accept or reject the Plan. Under the Bankruptcy Code, a determination that the Disclosure Statement contains "adequate information", as required by the Bankruptcy Code, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

8. **Voting Procedures.**

Not Applicable

I. **CURRENT OF STATEMENT OF OPERATIONS AND BALANCE SHEET, LIQUIDATION ANALYSIS**

Not Applicable

J. **CLAIMS OBJECTIONS**

If, as of thirty (30) days after the Effective Date, the Debtor has pending objections to claims, either filed as proofs of claim and/or scheduled in the Debtor's case (the "Disputed Claims"), no distributions otherwise due will be made by the Reorganized Debtor to the holders of Disputed Claims.  At the time of any distribution under the Plan, the Reorganized Debtor will reserve and will not distribute cash equal to the amount that the holders of Disputed Claims at the time of such distribution would have received had the Disputed Claims been Allowed Claims.  After the Court has determined all Disputed Claims, the reserved amount will be distributed in accordance with the provisions of the Plan.  At such time as a Disputed Claim becomes an Allowed Claim, the distribution that would have been dispersed had the Disputed Claim been an Allowed Claim on the Effective Date will be distributed by the Reorganized Debtor, without interest, to the holder of such Allowed Claim promptly after the Disputed Claim becomes an Allowed Claim pursuant to final order of the Court.

The Debtor and the Reorganized Debtor reserves the right to file objections to claims, to the extent that such objections are deemed necessary and appropriate.  Any objections to claims the Debtor intends to bring will be filed no later than thirty (30) days after the Effective Date.

K. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Unless the Confirmation Order shall otherwise provide, or the Debtor shall have filed a motion to modify, substitute or reject any executory contracts or unexpired leases on the

Effective Date, the Debtor will assume all executory contracts and leases which have not otherwise expired by their own terms. There are no contracts or leases to be assumed by the Debtor which require cure payments for assumption.

A proof of claim for any claim arising from the rejection of an executory contract shall be filed with the Clerk of the Court no later than thirty (30) days subsequent to the date that an order is entered rejecting the executory contract. The claim arising from the rejection of an executory contract or unexpired lease for which a proof of claim is not filed within such time shall be disallowed in its entirety, and shall be forever barred. The Debtor does not intend to file a motion to reject any executory contracts or unexpired leases. Accordingly, the Debtor does not anticipate that there will be filed any rejection damage claims.

## L.    FULL AND FINAL SATISFACTION

As provided in the Plan, all payments, distributions, and transfers of cash or property, under the Plan are in full and final satisfaction, settlement and release of all claims whatsoever existing as of the Confirmation Date against the Debtor, the Estate and the Reorganized Debtor, of any kind or nature whatsoever. These releases shall be effective upon Substantial Consummation of the Plan.

## M.    VOTING IMPAIRMENT, CONFIRMATION AND CRAMDOWN

### a.    Voting.

Claimants with allowed impaired claims are entitled to vote to accept or reject the Plan. A claimant who fails to vote to either accept or reject the Plan will not be included in the calculations regarding the acceptance or rejection of the Plan. Classes which are not "impaired" under the Plan, pursuant to Section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan.

If the Court determines that any class is impaired, then a ballot to be completed by the holders of Claims of that class or classes will be enclosed herewith.  Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length.  The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if, with respect to all classes of claimants, the Plan is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (½) in number of allowed claims in each class voting upon the Plan.

**b.     Confirmation Without Acceptance by All Impaired Classes; Cramdown.**

Generally, if a Plan is not accepted by all impaired classes, it may nevertheless be confirmed by the Bankruptcy Court if (i) the Plan is accepted by at least one Impaired Class and it meets all of the other requirements of Section 1129(a) of the Bankruptcy Code; (ii) the Plan does not discriminate unfairly; and (iii) the Plan is fair and equitable to the rejecting classes. Such a finding would require a determination by the Bankruptcy Court that the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code, including (a) with respect to a class of unsecured claims that no holder of any claim or interest junior to the claims of the rejecting class is receiving or retaining any property or payment under the Plan solely on account of such claim or interest, or (b) with respect to a class of secured claims, <u>inter alia</u>, the secured claimant: i) receives a deferred payment totaling the allowed amount of the claim, ii) of a value equal its collateral, and iii) retains its lien against the collateral.

The "cramdown" provisions for confirmation of the Plan despite the non-acceptance of one or more Impaired Classes of Claims or Interest are set forth in Section 1129(b) of the Bankruptcy Code.  Section 1129(b)(1) of the Bankruptcy Code states:

14

> Notwithstanding section 510(1) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the plan, the Court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

To the extent necessary, the Debtor will seek confirmation of the Plan under the "cramdown" provision of Section 1129 (b).

### c.    The Confirmation Hearing

The Bankruptcy Court has scheduled the Confirmation Hearing to be held before the United States Bankruptcy Judge Louis A. Scarcella , at the United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Central Islip, New York on _____at _:__ __.m.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of such adjournment in open Court. At the Confirmation Hearing, or at any adjourned hearing thereof, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of Claims and Interests. The Bankruptcy Court will also receive and consider a certification of ballots prepared on behalf of the proponent concerning the results of the vote on the Plan.

### N.    POTENTIAL AVOIDANCE AND OTHER SIMILAR CASES

The Debtor, after consultation with its professionals have determined that there are very few, if any, preference actions.  Under a cost benefit analysis, any such litigation would not increase the distribution to any class of creditors.  The Debtor has agreed that no such actions will be brought.  The Debtor has determined that there are no fraudulent conveyance actions to

be brought in this Chapter 11 Case.

## O.    TAX CONSEQUENCES TO ALLOWED CLAIMANTS.

The federal income tax consequences with respect to payments of Cash to Allowed Claimants in partial or full satisfaction of debt, or pursuant to a tax free recapitalization or other restructuring, depend on the allocation of such payments to principal and interest owed on the debt.  The allocation of payments between interest and principal may affect:

a.    the existence and timing of recognition of interest income by a cash basis Claimant;

b.    the existence and timing of interest deductions on a cash basis (and sometimes to an accrual basis) Debtor;

c.    the amount (and possibly the character) of worthless debt loss recognized by the Claimants;

d.    the amount of cancellation of indebtedness income recognized by the Debtor; and

e.    the amount of gain or loss recognized by the Claimant pursuant to a recapitalization under Internal Revenue Code § 368(a)(1)(E).

An Allowed Claimant will recognize ordinary income to the extent that any stock, debt securities, other premises, or cash received is attributable to interest (including original issue discount) ("OID") which has accrued while the Claimant held the debt and which the Claimant previously included in income, exceeds the fair market value of stock, debt and cash received by the Claimant which is attributable to such accrued interest (including OID).

In addition, such Claimants will realize gain on such amount equal to the excess of the fair market value of stock, debt, other premises and cash received (excluding amounts attributable to interest and discussed above) over the cost or other tax basis of the debt claims surrendered (excluding any tax basis allocated to accrued interest).  The gain may be a capital gain unless the exchange has the effect of a distribution of a dividend under

16

Internal Revenue Code § 305 (discussed below) in which case gain recognized that is not in excess of earning and profits of the Debtor will be treated as a dividend.  A corporate Claimant who receives a dividend may qualify for a dividend received deduction with respect to the dividend.

The rules regarding taxation of payments to Claimants which are attributable to other accrued but unpaid income items (e.g., rents, compensation, royalties, dividends, etc.) are similar to the rules described above for payments allocated to interest.

**-Importance of Obtaining Professional Tax Assistance.**

**THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF ADVICE FROM, A TAX PROFESSIONAL.  THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN THAT ARE DESCRIBED HEREIN AND THE STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN THAT ARE NOT ADDRESSED HEREIN, ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM.  ACCORDINGLY, EACH CLAIMANT AND EQUITY HOLDER IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**P.    RETENTION OF JURISDICTION.**

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and, <u>inter alia</u>, for the

17

following purposes:

(i)    To determine additional objections, if any, to the allowance of Claims or Interests;

(ii)   To determine any and all applications for compensation and reimbursement of expenses for professional fees and any other fees and expenses authorized to be paid or reimburses under the Bankruptcy Code;

(iii)  To amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purposes and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

(iv)   To determine any and all controversies and disputes arising under or related to the Plan;

(v)    To construe and enforce any and all provisions of the Plan;

(vi)   To determine any and all applications, motion, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court, or commenced within ninety (90) days of the Effective Date, concerning the administration of the Estate, or its property;

(vii)  To determine any and all controversies and disputes arising under or related to any settlement of an adversary proceeding or contested matter approved by the Bankruptcy Court, either before or after the Confirmation Date; and

(viii) To enter a final Order or decree in the Debtor's Chapter 11 Case upon notice to the Office of the United States Trustee.

(ix)   To determine such other matters as may be provided for in the Plan, Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code or Bankruptcy Rules.

## Q.    **FINANCIAL INFORMATION.**

The Debtor will file with the Bankruptcy Court monthly operating reports.  This financial information has not been included in this Disclosure Statement, but may be examined in the office of the Clerk of the Bankruptcy Court,  290 FEDERAL PLAZA, CENTRAL ISLIP, NY 11743, or, upon reasonable advance notice, or at the offices of

18

Phillips, Artura & Cox, Esqs.
165 South Wellwood Avenue
Lindenhurst, New York 11757

**R.      ACCOUNTING PROCESS**

The financial information contained in this Disclosure Statement was derived

from the Petition and  Schedules filed by the Debtor in this case.

**S.      CREDITORS RIGHTS UNDER § 1129(a)(15)**

Not applicable

**T.      DISTRIBUTIONS UNDER THE PLAN**

General Matters Concerning the Distribution of Consideration

**1.      The Disbursing Agent**

The Reorganized Debtor and such other Person(s) as may be approved by

the Reorganized Debtor, or the Bankruptcy Court, shall act as Disbursing Agent(s) under the

Plan.  Any such Disbursing Agent may, with the prior approval of the Reorganized Debtor,

employ or contract with other Persons to assist in or to perform the distributions required.

**2.      Cash Payments**

Cash payments made pursuant to the Plan will be in U.S. dollars by

checks drawn on a domestic bank selected by the Reorganized Debtor, or by wire transfer from a

domestic bank, at the option of the Reorganized Debtor.

**3.      Transmittal of Distributions**

A distribution shall be deemed made at the time such distribution is

deposited in the United States mail, postage prepaid.  Except as otherwise agreed with the holder

of an Allowed Claim or Allowed Interest, any distribution on account of an Allowed Claim or

Allowed Interest shall be distributed by mail to (1) the latest mailing address filed of record for

19

the party entitled thereto or to a holder of a power of attorney designated by such holder to receive such distributions or (ii) if no such mailing address has been so filed, the mailing address reflected on the filed Schedules of Assets and Liabilities or in the Debtor's books and records.

### 4.    Undeliverable Distributions

If any distribution is returned to a Disbursing Agent as undeliverable, no further distributions shall be made to the holder of the Allowed Claim or Allowed Interest on which such distribution was made unless and until the Disbursing Agent or the Debtor are notified in writing of such holder's then-current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable or is deemed canceled (as hereinafter provided).  Any unclaimed distribution held by a Disbursing Agent shall be accounted for separately, but the Disbursing Agent shall be under no duty to invest any such unclaimed distribution in any manner.  Any holder of an Allowed Claim or Allowed Interest that does not present a Claim for an undeliverable distribution within one hundred and twenty (120) days after the date upon which a distribution is first made available to such holder shall have its right to such distribution and all subsequent distributions discharged and shall be forever barred from asserting any such Claim or Interest against the Reorganized Debtor or her property or against any other Person or entity, including the Disbursing Agent.  All unclaimed or undistributed distributions shall, pursuant to Bankruptcy Code Section 347(b), be the property of the Debtor and shall be treated as determined by the Debtor in her sole and absolute discretion.

## U.    LEGAL EFFECTS OF CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 1.    Discharge and Injunction

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the Plan and any agreements or Orders entered in connection therewith, on and after the Effective Date and subject to the payments to be made under the Plan, and that:

a.     the rights afforded in the Plan, and the treatment of all Claims and Interests thereunder, shall be in exchange for, and in complete satisfaction, discharge, and release of all Claims, (including without limitation, all Administrative Claims, Secured Claims, and Unsecured Claims (including any interest accrued on such Claims from and after the Petition Date)), against the Debtor and the Reorganized Debtor, or any of its assets or properties and any liability thereunder;

b.     all substantive or obligations of the Debtor shall be terminated, and the Debtor and the Reorganized Debtor shall be deemed discharged and released to the fullest extent permitted by Bankruptcy Code Section 1141 from all Claims that arose prior to the Effective Date against the Debtor and the Reorganized Debtor or its property or assets, (including without limitation, all Administrative Claims, Secured Claims, and Unsecured Claims (including any interest accrued on such Claims from and after the Petition Dates)), and all debts of the kind specified in Bankruptcy Code Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  This discharge and release shall be effective in each case whether or not: (i) a proof of claim or proof of interest based on such Claim, Administrative Claim, or Interest is Filed or deemed Filed pursuant to Bankruptcy Code Section 501, (ii) a Claim, Administrative Claim, is Allowed pursuant to the Bankruptcy Code, or (iii) the holder of a Claim, Administrative Claim has accepted the Plan;

c.     all Persons and Governmental Units shall be permanently enjoined by Bankruptcy Code Section 524 from asserting against the Debtor, its successors, including the

21

Reorganized Debtor, or its assets or properties, any other further Claims, or Administrative

Claims, based upon any act or omission, transaction, or other activity of any kind or nature that

occurred prior to the Effective Date.  The discharge shall void any judgment against the Debtor

and the Reorganized Debtor at any time obtained to the extent that it relates to a Claim, or

Administrative Claim, that has been discharged or terminated;

     **d.**    all Persons and Governmental Units who have held, currently hold, or

may hold a Claim or Administrative Claim, discharged or terminated pursuant to the terms of the

Plan shall be permanently enjoined by Bankruptcy Code Section 524 from taking any of the

following actions on account of any such discharged Claim or Administrative Claim: (i)

commencing or continuing in any manner any action or other proceeding against the Debtor or

the Reorganized Debtor, its successors, assets, or properties; (ii) enforcing, attaching, collecting,

or recovering in any manner any judgment, award, decree, or order against the Debtor or the

Reorganized Debtor, its successors, assets, or properties; (iii) creating, perfecting, or enforcing

any lien or encumbrance against  the Debtor or the Reorganized Debtor, its successors, assets, or

properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any

obligation due to the Debtor or the Reorganized Debtor, its successors, assets, or properties; and

(v) commencing or continuing any action, in any manner or place, that does not comply with or

is inconsistent with the provisions of the Plan or the Confirmation Order.  Any Person or

Governmental Unit violating such injunction may be liable for actual damages, including costs

and attorneys' fees and, in appropriate circumstances, punitive damages; and

     **e.**    all Persons and Governmental Units who have held, currently hold, or

may hold a Claim or Administrative Claim, discharged or terminated pursuant to the terms of the

Plan shall be permanently enjoined by Bankruptcy Code Section 524 from commencing or

continuing in any manner any action or other proceeding against any party on account of a Claim

or cause of action that was property of the Estate, including, without limitation, any derivative

Claims capable of being brought on behalf of the Debtor or the Reorganized Debtor, and all such

Claims and causes of action shall remain exclusively vested in the Debtor and the Reorganized

Debtor to the maximum extent such Claims and causes of action were vested in the Debtor.  The

Plan shall be binding upon and govern the acts of all Persons including, without limitation, all

holders of Claims and Administrative Claims, all filing agents or officers, title agents or

companies, recorders, registrars, administrative agencies, Governmental Units and departments,

agencies or officials thereof, secretaries of state, and all other Persons who may be required by

law, the duties of their office, or contract to accept, file, register, record, or release any

documents or instruments, or who may be required to report or insure any title or state of title in

or to any of the assets of the Debtor or the Reorganized Debtor.

  **f.**  neither the Debtor, the Reorganized Debtor, nor counsel to the Debtor or

any Professional Person employed in the Chapter 11 Case, nor any of their respective members,

shareholders, officers, directors, employees, attorneys, advisors or agents shall have or incur any

liability to any holder of a Claim or Interest for any act or omission in connection with, or arising

out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the

Plan or the administration of the Plan or the property to be distributed under the Plan except for

willful misconduct, fraud, breach or fiduciary duty or gross negligence.

  **g**.  Notwithstanding any of the foregoing, the Debtor's discharge is governed

by the provisions of Bankruptcy Code Section 1141(d)(5) which states as follows:

> "In a case in which the debtor is an individual – (A) unless after
> notice and a hearing the court orders otherwise for cause,
> confirmation of the plan does not discharge any debt provided for in
> the plan until the court grants a discharge on completion of all

payments under the plan;

(B) at any time after the confirmation of the plan and after notice and a hearing the court may grant a discharge to the debtor who has not completed payments under the plan if – (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim of the estate of the debtor had been liquidated and under chapter 7 on such date; and (ii) modification of the plan under Section 1127 is not practicable; and (C) unless after notice and a hearing held not more than ten (10) days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that – (i) section 522(q)(1) may be applicable to the debtor; and (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

2.    **Revesting of Property of the Estate and Release of Liens**

Except as otherwise provided in the  Plan, any contract, instrument, or other agreement or document created in connection with the  Plan, or the Confirmation Order, on the Effective Date, all Property of the Estate, wherever situated, shall be revested  in the Reorganized Debtor, and except as set forth herein shall be free and clear of all Claims, mortgages, deeds of trust, liens, security interests, encumbrances, and other interests of any Person, and the Reorganized Debtor may thereafter operate its business and may use, acquire, and dispose of property and compromise or settle any Claims without the supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York, and the guidelines and requirements of the Office of the United States Trustee.

3.    **Votes Solicited in Good Faith**

The Debtor has, and upon Confirmation of the Plan will be deemed to have,

solicited acceptances of the Plan in good faith and in compliance with the applicable provisions

of the Bankruptcy Code. The Debtor (and each of its affiliates, agents, directors, officers,

members, employees, advisors, and attorneys if any ) have participated in good faith and in

compliance with the applicable provisions of the Bankruptcy Code and therefore has not been,

and will not be, liable at any time for the violation of any applicable law, rule, or regulation

governing the solicitation of acceptances or rejections of the Plan or the distributions made under

the Plan.

### 4. Administrative Claims Incurred After the Effective Date

Administrative Claims incurred by the Debtor after the Effective Date including

(without limitation) Claims for Professionals' fees and expenses incurred after such date, may be

paid by the Reorganized Debtor in the ordinary course of business and without application for or

Bankruptcy Court approval.

### V. MODIFICATION OR REVOCATION OF THE PLAN

Subject to the restrictions on modifications set forth in Bankruptcy Code Section 1127,

the Debtor and the Reorganized Debtor reserves the right to alter, amend, or modify the Plan

before or after the Effective Date. No alterations, amendments, or modifications may be made

by any party except the Debtor or the Reorganized Debtor. If the Plan is modified by the Debtor

or the Reorganized Debtor such entity will give notice of the amendment or modification to the

U.S. Trustee. A hearing on such issues and any resolicitation of ballots may significantly delay

Confirmation and, consequently, significantly delay distributions under the Plan.

The provisions of the Plan are not severable unless such severance is agreed to by the

Debtor or the Reorganized Debtor and such severance would constitute a permissible

modification of the Plan pursuant to Bankruptcy Code Section 1127.

W.    **SUMMARY OF CERTAIN OTHER PROVISIONS OF THE PLAN**

    1.    **Setoffs**

Except as otherwise provided in the Plan, agreements entered into in connection therewith, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor may, pursuant to Bankruptcy Code Section 553 or applicable non-bankruptcy law, setoff against any Allowed Claim (before any distribution is made on account of such Claim) any and all of the Claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim.

X.    **MEANS OF IMPLEMENTING THE PLAN**

The funds required for confirmation and the payment of claims required to be paid on the Effective Date shall be provided by the Debtor and the Reorganized Debtor from funds on hand and those generated from the business operations of the Debtor.  The balance of the funds to be paid in accordance with the Plan shall be generated from the sale of the Debtor's Residence.

Y.    **EVENTS OF DEFAULT**

It shall be an event of default if the Reorganized Debtor fails  to make any payment as provided in the Plan.

Upon written receipt from any creditor of notice of default, the Reorganized Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) day period, the creditors shall take no action to terminate this Plan.  If such default is cured by the Reorganized Debtor within said thirty (30) day period, then the Plan shall continue in full force and effect.  Notices of default shall be sent to the Reorganized Debtor and the Debtor's attorneys,

Phillips, Artura & Cox, Esqs.
165 South Wellwood Avenue
Lindenhurst, New York 11757

## Z.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code, and (ii) an alternative plan of reorganization or a plan of liquidation.

### A.    Alternative Plan of Reorganization

The Debtor and its professionals have explored various alternative scenarios and believe that the Plan enables the holders of Claims and Interests to realize the maximum recovery under the circumstances.  Given that this Plan calls for the liquidation of the Debtor's primary asset, the principal's Residence, no alterative Plan is likely to provide a greater return to creditors.  The Debtor believes that the Plan is the best plan that can be proposed and serves the best interest of the Debtor and the other parties-in-interest.

### B.    Liquidation Under Chapter 7

If no plan is confirmed, the Chapter 11 Case may be converted to cases under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by Chapter 7 of the Bankruptcy Code.  As discussed above, the Plan already proposes to liquidate the Debtor's Residence to satisfy, in full, all Allowed Claims.  The imposition of a Chapter 7 Trustee would only add an additional layer of administrative expenses, and potentially a delay, in the liquidation of the Residence since the Residence is owned by both the Debtor's principal and his wife.  For the reasons above, the Debtor believes that a liquidation under Chapter 7 of the Bankruptcy Code could result in a substantially smaller distribution to unsecured creditors and

only after a likely delay in the marshaling of the Debtor's assets.

## **CONCLUSION**

ACCORDINGLY THE DEBTOR BELIEVES THAT THE PLAN PROVES THE BEST

RECOVERY POSSIBLE FOR CLAIMHOLDERS AND THE DEBTOR'S STRONGLY

RECOMMEND THAT YOU SUPPORT THE PLAN.

Dated: Lindenhurst,  New York
June 19th , 2018

THIRTY WOODHOLLOW CT., INC.,


By:      /s/ Anupam Sharma_____
Anupam Sharma, President



/s/Richard F. Artura, Esq._____
Richard F. Artura, Esq.
Phillips, Artura & Cox, Esqs.
Counsel for the Debtor and Debtor in Possession
165 South Wellwood Avenue
Lindenhurst, New York 11757
631-226-2100
RArtura@Pwqlaw.com